CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 28 2019

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MARSHALL DEWAYNE WILLIAMS, ) <br> Petitioner ) <br> ) <br> v. ) <br> ) <br> ) <br> WARDEN, ) <br> ) <br> ) <br> Respondent. ) | Case No. 7:17cv528 <br><br><br> By: Michael F. Urbanski <br> Chief United States District <br> Judge |

## MEMORANDUM OPINION

This case is before the court on pro se petitioner Marshall Dewayne Williams's request for habeas corpus relief pursuant to 28 U.S.C. § 2241.[1] On May 14, 2018, Respondent, the Warden of the United States Penitentiary in Lee County, Virginia, filed a motion to dismiss as second or successive, or, in the alternative, for summary judgment, to which Williams responded on September 18, 2018. For the reasons set forth below, the court grants Respondent's motion to dismiss, or, alternatively, for summary judgment, and denies Williams's request for habeas relief.

---

[1] At the time Williams filed his petition, he was incarcerated in the United States Penitentiary in Lee County, Virginia, which is located in the Western District of Virginia. He has since been moved to the United States Penitentiary in Yazoo, Mississippi. However, this court retains jurisdiction and venue is proper here. See Sweat v. White, 829 F.2d 1121(4th Cir. 1987) (per curiam) (noting that jurisdiction attaches on the initial filing for habeas corpus relief and is not destroyed by a transfer of the petitioner and the accompanying custodial change).

## BACKGROUND

On February 2, 1984, Williams was arrested by Texas state authorities and charged with murder for an offense which occurred on January 27, 1984. ECF Nos. 18-1 at ¶5 and 18-5 at 2. The offense was described as destroying a newspaper dispenser by bomb, resulting in the death of another, and also possession of an unregistered firearm. ECF No. 18-4 at 1.

On June 7, 1984, Williams was charged in the United States District Court for the Northern District of Texas in cause number CR3-84-148-G with maliciously damaging and destroying by means of an explosive bomb property being used in an activity affecting interstate commerce and resulting in the death of another (Count 1); possession of a firearm as defined by registration and transfer record (Count 2); and unlawfully making a firearm and using an explosive to commit a felony (Count 3). ECF No. 18-1 at ¶ 6. On December 12, 1984, Williams was sentenced to life in prison on Count 1, a 10-year sentence on Count 2, and a 10-year sentence on Count 3, all to run consecutively to one another. Id. at ¶ 7 and ECF No. 18-2. On December 13, 1984 the sentence was amended to show that the 10-year sentences for Counts 2 and 3 were to run concurrently with one another, but consecutively to Count 1. ECF Nos. 18-1 at ¶ 6 and 18-3.

On December 14, 1984 the United States Marshals Service filed a detainer with the Texas state authorities. ECF No. 18-1 at ¶ 9. Williams was convicted on two counts of murder in two different Texas state courts on February 8, 1985, and February 21, 1985 respectively, and sentenced to two 50-year terms of incarceration, both of which were to run concurrently with his federal sentence. Id. at ¶¶ 10, 12 and ECF No. 18-5. Williams was

2

released by Texas back into federal custody on February 19, 1985. ECF Nos. 18-1 at ¶ 11 and 18-4.

On November 13, 1985 Williams's federal sentence stemming from the bombing was amended to impose a 99-year term of incarceration on Count 1, and 10-year terms on Counts 2 and 3 to run concurrently with each other and consecutively to Count 1, for a total sentence of 109 years. ECF No. 18-1 at ¶ 13. On August 11, 2005 Williams was released to mandatory supervision on the state charges while still in federal custody. ECF No. 18-5 at 1.

On May 14, 2008 Williams was indicted in the United States District Court for the Western District of Tennessee in cause number 2:08-cr-20161-01-D on one count of mailing threatening communications. Id. at ¶ 15 and ECF No. 18-7. Williams was found guilty of that offense and on February 27, 2009 he was sentenced to a term of 60 months, to run consecutively to the 109-year sentence. ECF No. 18-1 at ¶ 16 and ECF No. 18-8. The judgment was amended on November 26, 2012 to a 96-month term of imprisonment, to run consecutively to the undischarged sentence for the bombing and one of the state murder sentences. ECF Nos. 18-1 at ¶ 17 and ECF No. 18-9.

Williams argues that his sentences are not being calculated correctly and that he is entitled to release. In particular, he argues that (1) he is entitled to aggregate his "old-law" sentences related to the bombing and have the parole calculation made on a total sentence of 109 years rather than separately on the 99-year sentence and the 10-year sentences; (2) Respondent refused to grant him the good time and industrial good time he has earned; and (3) His mandatory parole date was miscalculated and he was entitled to release on parole after serving more than 30 years.

3

In Respondent's motion to dismiss and, alternatively, motion for summary judgment, he argues that Williams's petition should be dismissed as an abuse of the writ and that his claims should be denied on the merits because his sentence is being calculated correctly and he is not entitled to release. Williams responds that his petition is not subject to dismissal for abuse of the writ and that he is entitled to the relief he seeks.

## DISCUSSION

### I. Abuse of the Writ

Respondent argues that Williams's habeas application should be dismissed based on the principle of "abuse of the writ." The habeas statute addressing second or successive petitions provides the following:

> No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255.

28 U.S.C. § 2244(a). While § 2244(a) does not refer to proceedings brought under § 2241, district courts in the Fourth Circuit routinely apply § 2244(a) to find that §2241 proceedings are subject to dismissal for abuse of the writ. Courts have also applied the language found in 28 U.S.C. § 2244(b)(2) to find that § 2241 claims which could have been presented in an earlier petition are subject to dismissal absent a showing of cause and prejudice for the failure to present the claim. See, e.g., Garcia v. Meeks, No. 5:16-cv-02570-HMH-KDW, 2016 WL 8650124 at *2 (D.S.C. 2016) ("Because Petitioner could have raised the arguments he makes in the present Petition in his prior § 2241 action, the Petition submitted in this case is successive and an abuse of the writ."); (Nezirovic v. Heaphy, No. 7:15CV00170, 2015 WL

4

4112162 (W.D. Va. 2015) (noting that because petitioner raised or could have raised current challenges in previous § 2241 petition and presented no justification for failing to do so, claims were barred for review under the abuse of the writ doctrine); Hilton v. Johns, No. 5:11-HC-2098-BO, 2012 WL 3000429 at *2 (E.D.N.C. 2012) (commenting in a § 2241 case that the abuse of the writ doctrine mandates dismissal of claims presented in habeas petitions if they were raised, or could have been raised, in a previous petition); Coder v. O'Brien, 719 F.Supp.2d 655, 660 (W.D. Va. 2010) (discussing "abuse of the writ" doctrine in § 2241 cases and concluding that petitioner's claims were barred because they either were brought, or could have been brought, in prior § 2241 petition).

Williams has brought a number of previous § 2241 petitions, including one filed in this court on November 21, 2016. See Williams v. Warden, 7:16-cv-548-MFU-RSB, slip op. at 2 (W.D. Va. July 5, 2017), aff'd 204 Fed. App'x. 288 (4th Cir. 2017) (per curiam). Williams knew the basis of his current claim when he filed his 2016 action because he is alleging that he was entitled to release to mandatory parole when he had served 30 years of flat time, which would have been in 2014, or alternatively, when he had served 30 years of flat time plus good time, which would have occurred prior to 2014. Because Williams could have raised his current claims in his 2016 habeas petition, his current lawsuit is subject to dismissal for abuse of the writ. In the alternative, as discussed below, Williams's claims are denied on the merits because he has not suffered a violation of his constitutional rights.

## II. Sentence Calculation

### A. Aggregation of Sentences

Williams argues that miscalculation of his sentence by the Bureau of Prisons is violating his right to due process. He makes clear in his response to the motion for summary judgment that he is challenging only the calculation of the sentence imposed in 1984 and amended in 1985 in Cause No. CR-3-84-148-G. ECF No. 31 at 6. As amended, Williams currently is serving one 99-year sentence and two 10-year sentences, with the 10-year sentences to run concurrently with one another and consecutively to the 99-year sentence. Williams asserts that because he was convicted prior to enactment of the Sentencing Reform Act of 1984, his sentence should be calculated according the "old law," but that Respondent is calculating them according to the "new law."

Under the "old law," Williams's parole determination criteria are set out in 18 U.S.C. § 4206(d) (repealed), which provides the following:

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier. *Provided, however,* That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime. (Emphasis in original).

Respondent calculates Williams's two-thirds date by first looking at the 99-year sentence, which, because it is more than 45 years, makes him eligible for mandatory parole after 30 years. Respondent next looks at Williams's 10-year sentences which run concurrently with each other and calculates two-thirds of those sentences as being 6 years and 8 months. Respondent adds together the 30 years and the 6 years and 8 months to find that Williams will be eligible for mandatory parole 36 years and 8 months from the date computation

6

began, minus jail credit. This makes Williams's two-thirds date October 11, 2020. Admin. Rem. Resp., ECF No. 1-1 at 16-17.[2]

Williams argues that this calculation is incorrect, and the two sentences should be aggregated for a total of 109 years before the two-thirds calculation is made. If calculated that way, because the 109-year sentence is greater than forty-five years, Williams's two-thirds date would be thirty years from the date computation begins, minus jail credit.

However, according to Program Statement 5880.30, which addresses aggregation rules for two-thirds or 30-year parole eligibility purposes under the "old law," for a parolable sentence followed by a consecutive parolable sentence, eligibility is two-thirds of each consecutive term or terms added together for an aggregate, and then computed from the date computation begins, minus all presentence time. P.S. 5880.30, July 16, 1993, Appendix IV at 2-3. It is clear from the wording requiring service of "two-thirds of *each* consecutive term or terms," that the statute requires service of thirty years of the 99-year sentence followed by service of 6 years and 8 months of the ten-year sentences. See Hackley v. Bledsoe, 350 Fed. Appx. 599, 602 (3rd Cir. 2009) (finding BOP calculated sentence correctly by adding 30 years of a life sentence to two-thirds of a remaining 30-year sentence, or 20 years, for a total of 50 years, before petitioner would be eligible for mandatory parole) and Jorgenson, 2012 WL 1565292 at *9 (finding petitioner must serve two thirds of 25-year

---

[2] The fact that Williams will be eligible for parole does not mean that he will be released. The USPC has discretion to determine whether Williams is suitable for release from prison. Jorgenson v. O'Brien, No. 5:11cv174, 2012 WL 1565292 at * 9 (citing LaMagna v. U.S. Bureau of Prisons, 494 F.Supp. 189, 194 (D.Conn. 1980)).

7

sentence, plus a minimum of 30 years on each of two 50-year sentences, before becoming eligible for mandatory parole).

Thus, Respondent's calculation of Williams's two-thirds date is correct. He must serve 30 years on the 99-year sentence followed by 6 years and 8 months on the 10-year sentences before becoming eligible for mandatory parole.

### B. Calculation of Good Conduct Time

Williams also asserts that his good conduct time ("GCT") (also called statutory good time, or "SGT") has not been calculated correctly. Based on the dates of his 1984 offenses, Williams's good conduct time is calculated according to 18 U.S.C. § 4161 (repealed). Under that statute, prisoners serving a term of more than 10 years but less than life, who observe the rules of the institution, are entitled to earn 10 days of SGT per month. Other statutes allow for the forfeiture and restoration of SGT. See 18 U.S.C. §§ 4165 (repealed) and 4166 (repealed). Williams also is eligible to earn extra good time ("EGT") pursuant to 18 U.S.C. 4162 (repealed), at the discretion of the Attorney General. He may earn up to 3 days in the first year or part thereof of actual employment in an industry or camp and up to 5 days for each year or part thereof in succeeding years. He also may earn such discretionary time for performing exceptionally meritorious service or performing duties of outstanding importance in connection with institutional operations. Id.

Williams is earning SGT at the rate of 10 days per month. Over the course of a 109-year sentence it is possible to earn a total of 13,080 days.[3] As of April 12, 2018 Williams had forfeited 911 days of SGT and had 344 of those days restored. ECF No. 18-1 at ¶ 21. In

---

[3] 10 (days per month) x 12 (months in a year) x 109 (years) = 13,080 days.

addition, he has earned 714 days of EGT. Id. at ¶ 22. Assuming Williams continues to earn SGT with no forfeitures, he is projected to satisfy the 109-year term on November 25, 2056 via mandatory release. At that time, he will begin to serve the 96-month sentence. Id. at ¶ 23.

Williams argues that his good conduct time is not being calculated correctly and that Respondent has refused to grant him all the time he is due. He argues that he is getting "new law" credits and that the credits are being applied at the end of his sentence rather than at the end of each month. ECF No. 31 at 11. However, if Williams's good time were being calculated under the "new law," he would be earning only 54 days per year provided by 18 U.S.C. § 3624 rather than the 10 days per month he is earning under the "old law," 18 U.S.C. § 4161 (repealed). Respondent is calculating correctly Williams's GCT under the "old law" and Williams has not shown otherwise. Moreover, it is clear that Williams realizes that his GCT is being calculated under the "old law," because he states that he has earned a little more than 4,000 days. ECF No. 31 at 11. Williams has served roughly 34 years in prison. Thus, 10 (days per month) x 12 (months in a year) x 34 (years) = 4080 days of GCT.

Regarding Williams's claim that it is error to apply the GCT credit to the end of his sentence rather than at the end of each month, the Fourth Circuit Court of Appeals explained that "[u]nder the federal good time system, the Bureau of Prisons applies good time credits to the prisoner's maximum sentence which moves the mandatory release date forward, but does not affect the minimum term required to be served before an inmate becomes eligible for parole." Moss v. Clark, 886 F.2d 686, 688 (4th Cir. 1989) (citing 18 U.S.C. § 4161 (1982)). The court also noted that the GCT was credited monthly as earned.

9

Id. Williams has not shown that Respondent is applying his GCT incorrectly, or in a manner that violates due process.

**C. Parole Eligibility**

Williams also asserts that he is entitled to mandatory parole based on his years served plus GCT. Williams first became eligible for parole after serving 10 years, or on February 11, 1994. 18 U.S.C. § 4205 (a) (repealed); ECF No. 18-1 at ¶ 32. Williams had a hearing in front of the United States Parole Commission ("USPC") on November 7, 1994 and was ordered to continue serving his sentence to a 15-year reconsideration hearing in 2009. ECF No. 18-1 at ¶ 32. Williams has had hearings in front of the USPC every two or three years since then for a total of nine hearings. Williams has been denied parole each time. ECF Nos. 18-1 at ¶ 33 and 18-19.

At the hearing held July 10, 2013, the USPC denied Williams's parole and ordered him to continue to the expiration of his sentence. It was noted that if his two-thirds date preceded the mandatory release date calculated by the Bureau of Prisons, the USPC would conduct a record review of his case approximately nine months before the two-thirds date. If parole is not ordered as a result of the records review, the USPC will conduct a hearing. The purpose of the review and hearing are to determine whether there is a reasonable probability that Williams will commit a crime or whether he has frequently or seriously violated the rules of the institution. ECF No. 18-19 at 2.

Williams's 109-year term of imprisonment is deemed to have begun on February 19, 1985, the date he was released by the state of Texas and taken into federal custody. Id. at ¶ 19. He received 372 days of prior credit custody for the time he spent in state custody. Id.

at ¶ 20. His two-thirds date for mandatory parole is October 11, 2020, which is 36 years and 8 months from the date his federal sentence began, minus the 372 days of jail credit he received. Id. at ¶ 31.

Williams argues that the good time he has earned should be added to the flat time he has served as part of the two-thirds date calculation for mandatory parole. ECF No. 1 at 3. However, he cites no authority in support and the relevant statute, 18 U.S.C. § 4161 (repealed), states that good time is deducted from "the term of his sentence beginning with the day on which the sentence commences to run . . . ." And, as explained in Moss, good time credits are applied to a prisoner's maximum sentence, but do not affect the minimum term required to be served before an inmate becomes eligible for parole. Moss, 886 F.2d at 688. Accordingly, SGT and other time credits may not be added to Williams's flat time for the purpose of calculating his mandatory parole date.

## CONCLUSION

For the foregoing reasons, the court grants Respondent's motion to dismiss and, in the alternative, motion for summary judgment. Based upon the court's finding that William's has not made the requisite substantial showing of a denial of a constitutional right as required by 28 U.S.C. § 2253(c), a certificate of appealability is denied.

An appropriate Order will be entered.

Entered: 01-28-2019

/s/ Michael F. Urbanski
Michael F. Urbanski
Chief United States District Judge